48 CCPA

**EASTERN INDUSTRIES, INCORPORATED, Appellant,**

v.

**WATEROUS COMPANY, Appellee.**

Patent Appeal No. 6698.

United States Court of Customs and Patent Appeals.

June 9, 1961.

G. Cabell Busick, Mason, Fenwick & Lawrence, Washington, D. C., and Kane, Dalsimer & Kane, New York City (Phillip T. Dalsimer, New York City, of counsel), for appellant.

Joseph Y. Houghton, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

RICH, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board, 124 USPQ 520, which dismissed an opposition to the registration of Electro-Matic on the Principal Register as a trademark for fire pumps and fire pump accessories, application Ser. No. 691,341, filed July 14, 1955, claiming first use April 15, 1955.

Opposer is the owner and prior user by over 25 years of the identical trademark for automatic electric traffic control systems, various parts and accessories therefor, electrical controls for opening and closing doors, and electrical and electronic counting, measuring and recording and speed detecting apparatus used in connection with vehicles and other objects. It owns registrations Nos. 249,865 of Nov. 20, 1928, 611,343 of Aug. 30, 1955, and 611,771 of Sept. 6, 1955, thereon.

The record shows that applicant's "fire pumps" are, as the board said, "electrically controlled major midship fire pumps." Midship refers to installation on fire-engine pumpers. The significant fact here, however, is that applicant's pumps are electrically controlled. To quote from one of applicant's advertisements,

"*Fast 'in cab' shift*—The Electro-Matic shift control is located on the instrument panel [of the fire engine]. Pump shift is actuated by flipping this switch *without leaving the driver's seat*. Convenient, fast, dependable—precious seconds saved."

The advertisement illustrates the control which has an instruction plate on which the trademark "*Electro-Matic*" appears, alongside of the control switch. The mark, though stated to be for a pump—which sounds like very different goods from electrical apparatus—is in use actually associated with an electrical control for the pump.

The parties are in agreement that the sole issue is likelihood of confusion or mistake as to the source or origin of the goods, assuming the identical mark to be used on them.

Though there is an apparent effort to play down the fact, applicant admits in its brief that one of the items opposer makes and sells under its Electro-Matic trademark is, and we quote the brief, "a preemptor timer to be mounted within a firehouse to control signal lights immediately adjacent the firehouse to enable fire trucks and related equipment to freely move out of the firehouse. in an emergency." The record contains photographs of said preemptor as mounted on the wall of a firehouse and prominently bearing the Electro-Matic mark.

Applicant argues no likelihood of confusion by saying:

"A signal preemptor mounted in a firehouse to control a traffic light in front of the firehouse bears no more resemblance to a fire pump mounted as an integral part of the fire truck than a drinking fountain present in the firehouse or a clock mounted on the firehouse wall."

This passage, we feel, points up some of the fallacies in the applicant's reasoning. If an electric switch on the instrument panel of the fire truck and an electric clock on the firehouse wall bore the identical trademark—especially one suggesting some conection with an electrical industry—we think the conclusion is inescapable that at least the firemen would

assume that they had a common origin. Such is the situation here. It is not the hydraulic aspects of the pump that matter here, but its electrical features, which features are emphasized by applicant in its publicity. The drinking fountain analogy is not apt. In fact it backfires. We think there would be great likelihood of confusion as to origin if a fire truck pump and a drinking fountain in the firehouse both bore the trademark Hydramatic. Plumbing is plumbing and so with electrical apparatus. Identical marks thereon would suggest common origin.

Applicant argues that it sells its pumps only to a handful of fire truck manufacturers and never to the purchasers thereof, whereas opposer sells to municipalities. The record shows, however, that the fire truck manufacturers, at least to some extent, build the trucks to specifications of the purchasers. The latter would be municipalities and fire companies and it is also shown that applicant's advertising is directed, as applicant admits, to the purchasers of fire trucks to get them to specify applicant's pumps when they order them. Those who buy opposer's goods and those who specify applicant's pumps are of necessity to some extent the same or related people. While the builders of the fire trucks might never be confused as to the source of the pumps they install in their equipment, there certainly is likelihood of confusion in the minds of the ultimate users who specify the pumps to be installed, as to what their origin is.

The board said:

"Although the ultimate users of applicant's pumps for fire trucks and opposer's traffic control systems are to some extent the same, these goods pertain to different fields of trade,

they are used for unrelated purposes, and they are not goods which a single manufacturer would ordinarily be expected to make."

We agree with the initial statement as to the users. We cannot agree with the rest. Electrical traffic control equipment sold to municipalities and electrically controlled pumps for fire trucks also sold to municipalities are not, to our minds, very different classes of trade or even used for unrelated purposes, and insofar as they have electrical control in common we think they might well be expected to be made by the same company, considering the diversity of products many of this country's large manufacturers put out under common trademarks.

Applicant also argues from the highly suggestive character of the mark that confusion would not be likely. On this point we think opposer has the better of the argument in saying:

"* * * where two marks are not identical, the fact that they are both suggestive may lessen the likelihood of confusion, but where they are identical the suggestiveness of the mark has far less significance."

Applicant speaks of and cites cases relating to suggestive "words." Electro-Matic, however, is not a word. It is a combination of suggestive syllables. We do not have here a question of how close one can come to a suggestive or weak mark. We are dealing with identical marks and cases involving similar marks utilizing only suggestive portions which are identical are not in point.

Our opinion is that the board reached the wrong conclusion and its decision is reversed.

Reversed.