## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

American Personnel, Inc.

v.

Management Recruiters of Richmond, Inc.,
and Sales Consultants, Inc.

March 10, 1970

Case No. D-712

By JUDGE A. CHRISTIAN COMPTON

The plaintiff's prayer for a permanent injunction will be granted and it will be awarded damages and costs. Its claim for attorney's fees will be denied. The cross-bill will be dismissed.

This is an unfair competition case wherein the plaintiff and defendants each claim superior rights to the use of the name "Sales Consultants" in the trading area of concern in connection with the operation of employment agencies which specialize in the placement of sales personnel.

There is no dispute that the parties are using the same name and that such continued use by the plaintiff and the defendants has caused in the past and will in the future cause confusion and deceive persons of ordinary intelligence using ordinary care.

The plaintiff, a Virginia corporation having its registered office in Richmond, does business under its own name and under the assumed name of "Sales Consultants."

The defendant Management Recruiters of Richmond, Incorporated, is a Virginia corporation incorporated on March 20, 1968, with its registered office in Richmond and does business from its office located within one block of that of the plaintiff, having filed in August, 1968, certificates with the Chancery Court of the City of Richmond and the State Corporation Commission of its intention to do business as "Sales Consultants." The defendant Sales Consultants, Inc., is an Ohio corporation domesticated in Virginia having its registered office in Richmond. The defendant Management Recruiters of Richmond, Incorporated, has "the right of first refusal" of the purchase of a Sales Consultants' franchise for Richmond from the other defendant.

The plaintiff claims that it has continuously used the name "Sales Consultants" since 1964 in the State of Virginia as the name of a division of their employment agency business specializing in the placement of sales personnel; that it has spent considerable amounts of effort and money in advertising the name "Sales Consultants" and creating a good will under the name in the State of Virginia; and, that as a result, such name has acquired a secondary meaning in the State of Virginia. The plaintiff further asserts that it has no adequate remedy at law and that the use of the same name by the defendants in the same business in the same area constitutes an appropriation of the identical name used by the plaintiff and that unless the defendants are restrained from using such name, and prevented from encouraging such use by their franchisees, assignees or successors in interest, the plaintiff will suffer permanent and irreparable damage to its business.

The plaintiff asks for a permanent injunction prohibiting the use of the name, or any similar name in the State of Virginia; that the defendant Management Recruiters be required to withdraw its certificates of assumed name; and that it be awarded damages, defendants' profits, attorney's fees and costs as compensation for its alleged loss resulting from the defendants' infringement of its rights. In addition it asks that the court decide that

the slogan "placing salesmen is our only business" is not a protectable slogan. (Plaintiff's Brief, p. 1.) Moreover, the plaintiff seeks an injunction prohibiting use by the defendants of the plaintiff's registered trademark "SC" (PTB 1).

The defendants deny that the plaintiff is entitled to the relief sought; denies that as a result of the plaintiff's use of the name "Sales Consultants" it has acquired a secondary meaning; and denies that there has been any appropriation of the name by them.

In the cross-bill, the defendants assert that the defendant Sales Consultants, Inc., began doing business in December, 1959, in Ohio and thereafter throughout the United States using from the beginning the name "Sales Consultants"; that it began identifying its services by the service mark, "Placing salesmen is our only business," in interstate commerce in the United States in October, 1960; that such slogan is the subject of Federal service mark registration on the Supplemental Register dated July 26, 1966; that long prior to the adoption by the plaintiff of the name "Sales Consultants," the defendant Sales Consultants, Inc., through widespread use and advertising under its name and service mark had established a national reputation for that defendant, it having become nationally recognized in the employment agency field by said name and mark; and that the defendant Management Recruiters has the exclusive right to use the name "Sales Consultants" and the service mark in its employment agency business in the Richmond area. The defendants further contend that at the time of the adoption by the plaintiff of the name "Sales Consultants" and of the slogan "Placing salesmen is our only business," it had full knowledge of the prior use of the name and mark by the aforesaid defendant and that the plaintiff willfully adopted such name and slogan with intent to trade unfairly upon the defendant's established reputation and good will in the Richmond trading area. Furthermore, without insisting upon an amendment to the bill, the defendants deny that the plaintiff is entitled to an injunction prohibiting the use of the symbol "S/C".

The defendants claim infringement of their rights and seek an injunction prohibiting the use by the plaintiff of the name and mark in the State of Virginia or else-

where. The defendants further ask the court to order the plaintiff to withdraw its assumed name certificate filed in the Chancery Court of the City of Richmond on November 23, 1966; that plaintiff be required to deliver up for destruction all labels, signs, prints and advertisements in its possession bearing the service mark; and that the plaintiff be required to account to defendants for all profits derived by plaintiff doing business under the aforesaid trade name and service mark.

The plaintiff denies all of the material allegations of the cross-bill and denies that the defendants are entitled to any affirmative relief. Moreover, while it was not set forth in its pleadings, the plaintiff argues that the defendants are guilty of laches in failing to assert their purported trade name rights against it at an earlier date.

## The Evidence

### 1. The Plaintiff's Origin and Development

In 1962 Barbara Glenn, the present owner of the plaintiff corporation, and her former husband, Richard Glenn, began an employment agency business in Richmond under the name of American Personnel and Executive Placement Service. During the first several years of their business the Glenns, in placing their clients, followed the practice of having the particular applicant interviewed at the Glenns' office by any one of several counselors to determine the fitness and qualification of the applicant for an available job. Services were provided to those in many types of occupations, such as salesmen, engineers, shop clerks and typists. Within six months after the business was started, it became apparent to the Glenns that they needed to establish a separate division in their operation to handle salesmen only. There was a need to have applicants interviewed by counselors who specialized in placing only salesmen. It was also decided that a man (they had been using mostly female counselors) would be needed to head such division.

In early 1964 (R. 11) Mr. Glenn began talking with Kenneth Lawing about coming to work for American Personnel to establish the division for placement of salesmen. Some-

time between the end of February and the middle of March, 1964, the Glenns and Lawing set about to organize this type of operation and Lawing selected the name of "Sales Consultants, Inc." to be used for this division. At that time, the principals of the plaintiff were unaware of any other organization using the name.

Immediately thereafter advertising was begun through the medium of newspaper classified ads in the Male Job Opportunities--Salesmen Wanted section of the Richmond newspapers. Business cards were printed and ads were placed in the local telephone directory for 1965. This advertising under the name of "Sales Consultants" has continued under that name since that time. (Plaintiff's exhibits 1 through 5). A license to operate an employment agency under the name "Sales Consultants" has been issued by the State of Virginia each year since January, 1965. Code, Section 40-9.2. (P-6). In 1966 the license was issued to the plaintiff for the operation of "Sales Consultants (trading as SC)." Two weeks before this suit was filed on September 13, 1968, the plaintiff obtained a certificate from the Virginia State Corporation Commission of registration of the service mark "SC" (P-7). Code, Section 59.1-81.

Various slogans have been used in the plaintiff's advertising such as: "Handling Salesmen Exclusively" (P-3, 4); "For Salesmen Only" (P-5); "Specializing Only in Sales Careers" (P-2); "Placing Salesmen is Our Only Business: (P-2, Telephone directory yellow page ads for 1965, 1966 and 1967); and "We place Salesmen only--Since 1964" (D-1).

The plaintiff began the use of "Placing Salesmen is our only Business" with the publication of the 1966 Richmond telephone directory in the yellow pages thereof, the deadline for placing such ad being October of 1965. In August of 1965 (from the 12th to the 15th) Richard Glenn was in Chicago, where the defendant had a Sales Consultants office using the above slogan, to attend a bridge tournament. "By that time" (R. 23), Glenn had heard of the defendant, visited its Chicago office identifying himself and advised the defendant's employees of the use of Sales Consultants in Richmond. Glenn testified that the copy for this ad using this slogan was made up before he heard of the defendant's use of the same slogan (R. 31). This

slogan was used by the plaintiff until it learned in the fall of 1968 of the defendant's entrance into the Richmond market in 1968 (R. 34). Thereafter the slogan "We Place Salesmen Only--Since 1964" was adopted (D-1).

Since its inception in 1964 to the time of the trial the plaintiff's Sales Consultants business has expanded. The plaintiff's evidence showed that during this time it had enjoyed an excellent reputation in the sales community and that the name Sales Consultants therein has been identified exclusively with the plaintiff.

Its costs and sales volume has increased during the period. Advertising costs totalled about $2,511 in 1965, $3,857 in 1966, $5,472 in 1967 and $4,180 in 1968. The sales volume of the plaintiff for Sales Consultants in 1964 was approximately $14,870, $16,302 in 1965, $37,975 in 1966, $42,941 in 1967, $30,923 in 1968 and $11,146 during the first quarter of 1969. (R. 153, 154). A list is in evidence showing the names of 1178 persons or organizations who have at one time or another, "most of them repeatedly," done business with the plaintiff's Sales Consultants. (R. 164) (P-11).

The plaintiff's evidence shows that its direct contacts are, for the most part, sales managers who are located in the Virginia-Carolinas area and who are employed by both regional and national companies. (R. 165, 170, 171, 179, 180, 181). The contact with the plaintiff is made usually in Richmond and the placement is often made outside of Virginia (R. 165).

The sign "SC" has been used by the plaintiff in its advertising of Sales Consultants since 1964 or 1966. The sign "S/C" has been used by the defendants in their ads (R. 248).

### 2. The Defendants' Origin and Development

In 1959 Elton Marcus selected the term Sales Consultants to be used in connection with his business of furnishing employment services from his location in Cleveland, Ohio. Marcus had started in this business in January of 1957 and traded under several different names until he decided in 1959 to be a sales specialist in placing only salesmen. He then selected the name Sales Consultants and changed from a sole proprietorship to a corporate

structure in 1960. This entity is one of the defendants herein, and on December 20, 1965, was authorized to transact business in Virginia (D-4).

In 1960 Marcus operated only two offices at different locations in Cleveland, one a Sales Consultants office placing only salesmen and a "Management Recruiters" office placing technical, administrative, data processing and clerical personnel. Marcus testified that in 1962 and 1963, he formulated a plan for nationwide expansion (R. 114).

Prior to 1964, the defendant Sales Consultants opened one other office which was located in Chicago in December of 1963. Prior to March, 1964, placements were made by Marcus in "at least half the states of the union, but primarily along the east coast, from the Mississippi to the East Coast" (R. 58, 59). He advertised in the Purdue University alumni magazine from 1961 through 1965, which he said has a circulation of 50,000. Three scrapbooks of ads were introduced containing ads placed by the defendant in the Cleveland *Plain Dealer* newspaper and the *Wall Street Journal* (Eastern, Midwest, Pacific and Southwest editions) from April, 1958, to January of 1965 from the Cleveland office only. Marcus testified that the first ad in the eastern edition of the *Wall Street Journal* for Sales Consultants appeared in June of 1960, and that the first ad in such edition using the slogan "Placing Salesmen is our only business" appeared in July of 1961 (R-76). (This slogan was registered in the U. S. Patent Office on the Supplemental Register of July 26, 1966 [D-5].) Marcus further testified that since the above dates, newspaper advertising has been conducted continuously using the name Sales Consultants and the slogan. He stated that the other Sales Consultants offices around the country also advertise in their local papers. Defendants' exhibit 14 dated in June/July, 1968, shows that 29 Sales Consultants offices, either company owned or franchised offices, have been established in the states of California (3), Colorado (1), Georgia (1), Illinois (1), Indiana (1), Maryland (1), Michigan (2), Minnesota (1), Missouri (2), New Jersey (2), New York (2), Ohio (6), Pennsylvania (2), Tennessee (1), Texas (1), Virginia (Richmond) and the District of Columbia (1). One is contemplated in Alexandria, Virginia (R. 59). See also D-15,

pp. 10, 11 and 12. Marcus testified that at the time of trial, thirty-five company owned offices had been established.

Marcus stated that the company-owned Sales Consultants offices employed about three hundred employees and were operating at an annual gross volume of sales at the time of the trial of five million dollars. In February of 1964 the defendant had ten employees (R. 111).

The defendants offered evidence to show that before 1964 the defendant Sales Consultants had established a business relationship with employer and employee applicants in Virginia (D-7, D-8 and D-12). Evidence was also offered to show that prior to mid-1964 the defendant Sales Consultants was doing business in the states of Pennsylvania, New York, Minnesota, Massachusetts, Illinois, California, Kentucky, Michigan, Connecticut, Idaho and New Jersey (D. 18). Evidence of business done in the State of Virginia in 1967 and 1968 in Alexandria, Falls Church, Leesburg, Richmond, Springfield, Lynchburg, Arlington, Winchester and McLean was offered (D. 19).

Although he did not recall seeing him personally in August of 1965, Marcus was informed of Glenn's visit to the Chicago office at which time Marcus first learned of the plaintiff's use of Sales Consultants (R.84). The defendants offered evidence to show that Glenn was warned about using the defendant's name and informed during this visit of the defendant's plan to expand into Virginia during 1968 or 1969. The defendant's evidence showed that Glenn had indicated that his use of "Sales Consultants" was only as an advertising technique in connection with the operation of Sales Consultants as a division of American Personnel, Inc. (R. 118, 194). The witness Basil testified that Glenn was "knowledgeable" of the defendant Sales Consultants prior to the visit to Chicago (R. 196). Glenn denied all of the above.

The defendant Management Recruiters of Richmond, Incorporated, is a franchisee of Management Recruiters International, a publicly owned company which has 120 offices in this country, England and Canada. Marcus is president of the franchisor which uses the tradenames of Management Recruiters and Sales Consultants in carrying out the employment agency business.

The defendant Management Recruiters of Richmond, Incorporated, through its principal officer, the witness Edward J. Becker, has "the right of first refusal" on the purchase of a Sales Consultants franchise for the general Richmond marketing area.

## The Conflict

As the result of the aforestated development of the plaintiff and the defendants, a condition developed in the Richmond marketing area when the defendants' office was opened and it began doing business in mid 1968 as Sales Consultants which both sides admit caused confusion, and likelihood of confusion, in the minds of customers and prospective customers of the respective parties. This suit followed as a consequence of the confusion which arose.

The jurisdiction of This Court to adjudicate the issues is clear. 4 Callman, Unfair Competition, Trademarks and Monopolies, 3rd Edition, Section 90.2(b).

## The Main Issues Involved

The main issue is whether under common law equitable principles the plaintiff or the defendants have superior rights in the use of the name "Sales Consultants" in the trading area of concern. In order to determine the answer to this main question, other issues must first be resolved, such as: (1) What is the geographical area in dispute? and (2) Has the use of the name by the plaintiff or by the defendants, or either of them, in connection with their respective businesses acquired a secondary meaning in this trading area?

Since the decision of this suit involves mixed questions of fact and law, the court will discuss its findings of fact together with the law applicable thereto rather than attempting to state the findings of fact separately.

## 1. The Area Involved

The plaintiff in the prayer of its bill correctly delineates the area in dispute. It asks therein that the defendants be enjoined from using the name in the

State of Virginia. This area was enlarged during the oral argument following the hearing when the request was made for an injunction to apply to Maryland, District of Columbia, Virginia and North Carolina (R. 286). The area was further expanded to include both of the Carolinas in plaintiff's opening brief (p. 23) and reduced in plaintiff's reply brief (pp. 20, 21) when it argues that the defendants should not be allowed to open offices or use the name in Virginia or eastern North Carolina. The court holds that the trading area of concern here is restricted to the boundaries of the State of Virginia.

Even if the pleadings are to be disregarded, neither side of this case has offered sufficient proof as to its activities in Maryland, District of Columbia or the Carolinas or elsewhere to enable the court to make any determination concerning the respective rights of the parties in those areas. Therefore the decision in this case will only affect the rights of the parties within the State of Virginia and not elsewhere. See 1 Nims, Unfair Competition and Trademarks, 4th Ed., Section 38.

### 2. Secondary Meaning

The plaintiff claims that its use of the name "Sales Consultants" in the trading area (now determined to be the State of Virginia) has acquired a secondary meaning thereby giving it superior rights to its use therein. The defendants claim that "[E]ven if the trading area of concern could be rationally limited to the Commonwealth of Virginia, the evidence clearly shows that the defendant was the first to use the name Sales Consultants in the employment agency business within the Commonwealth" (brief p. 20). The defendants further assert that the plaintiff has not proven secondary meaning. In addition the defendants argue that the name has acquired secondary meaning associating it with the defendant. Finally on this point, the defendants urge that the defendant has superior rights in Virginia to the use of the name because Virginia was in "the natural zone of expansion of defendants' business."

Upon these points the court finds that prior use in Virginia has not been proven by the defendants but rather than the evidence shows that the plaintiff innocently adopted in 1964 the name "Sales Consultants" without

knowing of its prior use elsewhere by the defendant. Furthermore, the court finds that the plaintiff's use of the name has been such that it has acquired a secondary meaning which identifies it in Virginia with the plaintiff and that such secondary meaning as to them has not been shown by the defendants. Finally, the court finds that there was no "plan of expansion" as claimed by the defendants or that Virginia was included in any such plan if one existed.

Before commenting on the evidence on these points, the law should be discussed. The name Sales Consultants is not fanciful such as to allow protection as a technical trademark but is descriptive of the plaintiff's goods, services and business. "Tradenames have been divided into exclusive and nonexclusive tradenames; the former are protected upon the same principals as trademarks are. Nonexclusive tradenames are such names as are *publici juris*, that is, open to or exercisable by all persons in their primary sense, but which in a secondary sense have come to indicate the business of a particular trader." 150 A.L.R. 1067, 1071.

The Virginia law on the subject has been stated in *Rosso and Mastracco v. Giant Food*, 200 Va. 159, 118 U.S.P.Q. 566 (1958), at page 164 of the Virginia Reporter as follows:

> The doctrine of secondary meaning as an element of unfair competition embraces a great area of the law, and has been discussed and considered in many cases. The definition and elements of secondary meaning may be briefly stated as follows:
>
> Words and symbols used in connection with one's goods, services, or business, or physical attributes of goods, not capable of being appropriated as a technical trade mark, are deemed to have acquired a secondary meaning when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves." Annotation, 150 A.L.R., page 1079.

See also 87 C.J.S., Trade-marks, Trade-names and Unfair Competition, Section 90, pages 319 *et seq.*; 52 Am. Jur., Trademarks, Trade-names and Trade Practices, Section 72, pages 554 *et seq.*

"To constitute unfair competition in respect to a trade-name, two elements must be present. The name must have acquired a secondary meaning or significance that identifies the plaintiff, and the defendant must have unfairly used the name or a simulation of it, to the prejudice of the plaintiff's interests." 150 A.L.R., Annotation, page 1076.

One who claims that a name used by him in connection with his business has acquired a secondary meaning has the burden of proof, and that burden is a substantial one, that is, must be sustained by a fair preponderance of evidence or by substantial evidence sufficient to show that the use of the trade name by another will result to the prejudice of the complainant. 150 A.L.R. 1078.

See also *Food Fair Stores, Inc.* v. *Square Deal Market Company, Inc.,* 206 F.2d 482, 98 U.S.P.Q. 65 (D.C. Cir. 1953); *United Drug Company* v. *Theodore Rectanus Company,* 248 U.S. 90, 63 L. Ed. 141, 39 Sup. Ct. 48 (1918); and *Hanover Star Milling Company* v. *D. D. Metcalf,* 240 U.S. 403, 60 L. Ed. 713, 36 Sup. Ct. 357 (1916). cf. *Food Fair Stores, Inc.* v. *Lakeland Grocery Corp.,* 301 F.2d 156, 133 U.S.P.Q. 127 (4th Cir. 1962). See also 18 M.J. *Trade-Marks, Trade-Names and Unfair Competition,* Section 4, and 1 Nims, Unfair Competition and Trade-Marks, Fourth Edition, Section 37, page 154. The evidence of the plaintiff clearly establishes secondary meaning.

Turning to the defendants contentions in the order made, there is no sufficient evidence to support a finding of fact that the defendant was the first user of the name in Virginia. True, there is some vague testimony that prior to 1964 perhaps a few pieces of Sales Consultants correspondence reached Virginia initiated by the defendant (R. 85, 86) but certainly not to the "considerable" extent as occurred in Utah in the case of *Sweet Sixteen Co.* v.

*Sweet "16" Shop, Inc.*, 15 F.2d 920 (8th Cir. 1926), relied upon by the defendants. There is also some indefinite and inconclusive testimony by the witness Marcus that he made placements in Virginia during the period before 1964 (R. 62, 93). Defendants' exhibits 7 and 8 are not convincing on this point. Certainly infrequent ads placed in the eastern edition of the *Wall Street Journal* cannot be the basis for a finding of prior uses of the name in Virginia nor can ads placed in the alumni magazine of a midwestern university support such a conclusion.

As stated, contrary to the defendants' argument the court finds that the plaintiff has shown "by a fair preponderance" of the evidence that the name used in connection with the plaintiff's business acquired a secondary meaning in Virginia. The testimony of the witnesses Young, Lewis, Wendt and Archer proves that fact. The defendants argue that these witnesses' testimony show "some evidence" of secondary meaning as of the date of the trial in April, 1969, but not prior to that time. That argument is not supported by the facts. The witness Young (R. 43) drew on his experience "in 1964 or '65." The witness Lewis used the plaintiff's services in 1964 and continuously thereafter. (R. 48). The witness Wendt started dealing with the plaintiff in 1964 (R. 52).

The defendants concede in their brief (page 13) that they have failed to prove secondary meaning for their claimed use in Virginia of "Sales Consultants."

The defendants say that even if the defendant was not doing business in Virginia prior to plaintiff's use of the name here, that nevertheless the defendants' rights are superior in Virginia because the state was included in "the natural zone of expansion" of defendants' business. Such fact has not been proven by the defendants. The testimony offered to support this claim by the defendants shows very little more than the hope and expectation common to all embryo businesses to grow and expand. Neither the fact that defendant Sales Consultants, Inc., became domesticated in Virginia in 1965, about four months after Glenn's visit to its office in Chicago, nor the fact, as argued by the defendants on page 14 of its brief, that the opening of a Pennsylvania office which was "closer to Virginia" than Ohio and Illinois offices show the probability of any planned expansion into Virginia at the time the plain-

tiff began use of the name in This State. Moreover, the *Sweet Sixteen* case, *supra*, upon which the defendants place great reliance, was decided upon facts quite different than are here presented. There, "considerable" mail order business had been conducted in Utah, the state of planned expansion, as well as considerable advertising therein. Also there was evidence that definite plans had been made to rent and establish a store in Salt Lake City. None of those factors are present in this case.

In *Food Fair Stores, Inc.* v. *Lakeland Grocery Corp.*, 301 F.2d 156, 133 U.S.P.Q. 127 (4th Cir. 1962), relied on by the defendants, there was evidence that, while defendant Lakeland began operating in 1953 under the Food-Fair name in the Norfolk-Portsmouth area, there had been negotiations by plaintiff for a chain of stores in Newport News in 1955. In addition, there was an effort to buy out defendant in 1956 prior to the actual opening in 1958 of plaintiff's store. The court there held that the expansion by the plaintiff into the area was "not merely possible but probable" as early as 1949 and that all of these factors when considered with the "size and rate of expansion" of the plaintiff's business showed a probability of expansion in the Norfolk area. Again, the defendants' evidence in this case is entirely different and much weaker than that of Food Fair in the *Lakeland* case. The same conclusion applies to the case of *Household Finance Corp.* v. *Household Finance Corp.*, 11 F. Supp. 3 (N.D. W.Va. 1935).

The case of *The Southland Corporation* v. *Schubert, et al.*, 160 U.S.P.Q. 375 (C.D. Calif. 1968) can also be distinguished on its facts. From a beginning in Texas in 1944 the plaintiff's business of operating retail grocery stores using the trade-name "7-ELEVEN" expanded so that by 1959 it had 258 stores in Texas, District of Columbia, Virginia and Maryland. At that time licensees of the plaintiff were operating a total of 258 affiliated "7-ELEVEN" stores in Florida, Arkansas, Louisiana and Oklahoma. By 1962 the plaintiff was operating 845 "7-ELE-VEN" stores in 12 states with total sales of over one hundred million dollars. In March of 1964, the plaintiff acquired Speedee-Mart, Inc., which was operating 126 of these "convenience stores" in the San Diego and San Francisco area. By the end of 1964 the plaintiff had 1,894

stores in 21 states and the District of Columbia with total sales of Two Hundred Fifty Million dollars per year including 219 stores in California with the one in Riverside, California, being the closest to the defendant's like operation in San Bernardino. In 1968 there were about 2,800 "7-ELEVEN" stores in 28 states and the District of Columbia with a total sales rate of about Five Hundred Million Dollars a year.

In 1959 the defendants' predecessors in interest organized and opened for business a small retail grocery store under the name "7-ELEVEN Market" in San Bernadino having learned of the plaintiff's successful operation of its interstate chain of stores. The confusion which resulted as the result of the parties conducting the same business under similar names in the San Bernadino area brought on the litigation over, among other things, the right to use the name in the San Bernadino area. The court held that the junior use was not innocent nor was it "located in an area beyond the reasonably foreseeable expansion" of the plaintiff's use of the name. It was also held that the usage of the plaintiff was not remote at the time the junior user began. (160 U.S.P.Q. 388, 389).

A recital of facts in *Southland* makes apparent the distinguishing features of the case under consideration. The defendants here had not in 1964, nor have they since 1964, saturated the employment agency market to any substantial degree as had Southland the "convenience store" market. Furthermore, while the court fully appreciates the nature of the employment agency business in that it tends to be broader in scope than the corner drugstore as the result of modern methods of advertising and communication, there is not the evidence in this case to support a finding that the Virginia market had been covered as extensively by the defendant here as was the case in *Southland*. The degree of coverage of the area in view of the volume of its operations and the extent of good will created by Southland when viewed in terms relative to the litigants in this suit fail to support the defendants' contentions of either planned expansion into Virginia or of secondary meaning in Virginia of the defendants' use of Sales Consultants.

Counsel for the defendants has referred the court to the decision in the recent case from the Court of Chancery of the State of Delaware in and for New Castle County of *Air Reduction Company, Incorporated* v. *AIRCO Supply Company, Incorporated* decided October 14, 1969. This case can also be distinguished on its facts from the case at bar. The plaintiff's mark, Airco, had been used for fifty years and registered many times. It had "long since become known as Airco by its suppliers, customers *and the public in general*" (emphasis supplied). From its beginning in 1915 in the business of extracting oxygen and other component elements from the atmosphere and placing such extracts in containers for industrial and other uses, the plaintiff now operates through eight corporate divisions over four hundred business establishments in the United States, Canada and Western Europe employing 13,500 persons. The defendant, a much smaller company which was founded in Texas in 1950 is engaged in a different business but uses "Airco" in its name and confusion has resulted because it and the plaintiff have some of the same customers particularly in the aircraft and aerospace industries. Injunctive relief has been granted the plaintiff and its superior rights to use of the name Airco was determined. In that suit the plaintiff's trademark or trade name had been "firmly established" with not only its suppliers and customers but with the public in general. Such is not the case, under the evidence in this suit, with the defendant Sales Consultants, Inc.

### Plaintiff's Trademark "SC"

On August 30, 1968, the plaintiff was issued a certificate of registration for the service mark "SC" by the State Corporation Commission (P-7), the plaintiff having used such mark since 1964 (R. 21) or 1966 (R. 247). Code, Section 59.1-81. The evidence shows that the defendant has used the mark "S/C" in its advertising (P-13) (defendant's brief at page 36). The slash mark inserted between "S" and "C" does not prevent the defendants' mark from being a "colorable imitation" of "SC," therefore under Code, Section 59.1-88(a) the defendant Management Recruiters has infringed the plaintiff's mark and is entitled

to an injunction restraining in Virginia the defendants' use of the mark "S/C" or of any "counterfeits or imitations" of the mark "SC." The plaintiff is further entitled to an award of damages, if any, suffered by reason of such wrongful "use of the mark 'S/C' by the said defendant." See also 18 M.J. *Trade-Marks, Trade-Names and Unfair Competition*, Section 5.

## Plaintiff's Use of
### "Placing Salesmen is our only business"

The plaintiff has now discontinued use of this slogan which the defendant Sales Consultants has registered as a service mark on the Supplemental Register (D-5). Section 23 of the Lanham Act (15 U.S.C. 1091). Such registration is evidence of only the fact that the registration was issued. *Elmer Candy Co.* v. *Wright's Ice Cream*, 125 U.S.P.Q. 194 (1960). Such registration confers no greater rights than existed at common law without registration. The right to the exclusive use of the mark is "bottomed on priority of appropriation" but it is only where "the trade goes attended by use of the mark that the right of the owner of the trade-mark is protected as against the sale by others of their product similarly labeled." *Griese-Dieck Western Brewery Co.* v. *People Brewing Co.*, 149 F.2d 1019, 1022 (8th Cir. 1945). The defendants' evidence fails to show that the use of the slogan has become identified in Virginia with the defendants or either of them, therefore even though the evidence shows that Glenn adopted the slogan following his Chicago visit the defendant is not entitled to the relief it seeks under the evidence in this case. The defendants rely on the case of *Eastern Industries, Incorporated* v. *Waterous Company*, 289 F.2d 952 (C.C.P.A. 1961) to support its position on this point. That case is not applicable because the sole issue there was "likelihood of confusion or mistake as to the source or origin of the goods, assuming the identical mark to be used on them." 289 F.2d 953. The court there found that the use of "Electo-Matic" by the applicant as a trademark for fire pumps would result in the likelihood of confusion with the prior long use of the identical mark by the opposer on its automatic electric traffic control systems.

Moreover, the slogan "Placing salesmen is our only business" is a descriptive phrase in that it supplies the characteristics of the service performed by the defendants. Such being the case it can only be protected if it is found to have acquired a secondary meaning. Callman, Unfair Competition, Trademarks and Monopolies, 3rd Ed., Section 85.1; 1 Nims, Unfair Competition and Trademarks, Fourth Edition, Section 41, p. 167. A descriptive phrase does not acquire such secondary meaning unless it is used to indicate the origin of the service rendered. As previously stated, such proof on behalf of the defendants is lacking in this suit. Such slogan may therefore be used by the defendants' competitors in Virginia provided such competing use is with due and reasonable care to distinguish their product from that of the defendants. *Skinner Mfg. Co.* v. *General Foods Sales Co.*, 52 F. Supp. 432, 450 (D.C. Neb. 1943), Aff'd. 143 F.2d 895 (8th Cir. 1944), cert. den. 323 U.S. 766; *Reo Motor Car Co.* v. *Traffic Motor Truck Corporation*, 4 F.2d 303 (D.C. Cir. 1925).

### *Laches*

In view of the conclusions reached above, the question of the delay, if any, by the defendants becomes moot. The time at which the defendants asserted its alleged rights in Virginia has been considered by the court in determining whether or not the defendant Sales Consultants planned expansion into the Richmond market area as discussed *supra.*

### *The Plaintiff's Remedies*

### *1. Injunction*

The defendants will be permanently enjoined by an order the scope of which will be consistent with the views expressed above. Counsel for the plaintiff will please draw the sketch for the final decree in this suit and submit it to defendants' counsel for endorsement. If the parties cannot agree on the scope of the injunction counsel for the defendants may submit their own sketch for the decree and the court will resolve the disagreement, if any exists.

### 2. *Monetary Award*

"A decree for profits and damages does not necessarily follow an injunction, but it normally does where an injunction issues against unfair competition, willfully conducted by the defendant with knowledge of the plaintiff's rights." 4 Callman, Unfair Competition and Trademarks, Section 89.1(a), p. 1854.

It is uniformly settled that counsel fees cannot be recovered, with certain exceptions which are not applicable here. *Ibid.* Section 89.3(d), page 1902. cf. *Admiral Corp.* v. *Penco Inc.*, 106 F. Supp. 1015, 1021-1022 (W.D. N.Y. 1952), 203 F.2d 517 (2nd Cir. 1953). Note also the remedies prescribed for infringement of registered trademarks in Virginia under Code Section 59.1-89 which does not provide for an allowance of attorney's fees.

The plaintiff here seeks damages, the sum to include: (a) the profits of the defendant Management Recruiters made since the opening of its Richmond office; (b) the plaintiff's losses as the result of the alleged dilution of its trade name rights and those losses caused by the direct competition from the defendants in the same city under the plaintiff's name; and (c) the costs of the action.

Since the bad faith and wrongful intent of the defendants is apparent from the manner in which they opened their Richmond office about one block from that of the plaintiff to engage in the same business in the same area under the same name with full knowledge of the plaintiff's rights in the area, a monetary award will be made to the plaintiff. 4 Callman, Unfair Competition and Trade-Marks, Section 89, pp. 1852-1901. Such award will be made if the plaintiff can prove its alleged damages resulted from the defendants' wrongful actions. This depends, of course, upon a showing of a loss by the plaintiff and that the defendants have made a profit. *Q-Tips, Inc.* v. *Johnson & Johnson*, 108 F. Supp. 845, 867 (D.C. N.J. 1952), 206 F.2d 144, 149 (3rd Cir. 1953). See also 2 Nims, Unfair Competition and Trademarks, Chapter XXV, pp. 1324-1391.

Unless the parties agree to the contrary the court will not refer this matter to a commissioner in chancery for the ascertainment of the amount of the plaintiff's

monetary award. Such a referral could be time consuming and expensive to each side. All of the evidence touching this issue can be presented at a further hearing of this suit in open court with not more than one day being alloted for such hearing. Prior to such hearing the defendants shall account to the plaintiff for all profits derived by the defendants after opening its Richmond office while doing business in the State of Virginia using the name "Sales Consultants" and/or using the mark "S/C."

Counsel for the plaintiff will please present a sketch for the decree in accordance with the above views. It should establish a date upon which the defendants' accounting of profits should be filed and should establish a date for the hearing on damages. Such date may be obtained from the court for a day convenient to counsel for both sides. In addition the order should provide that the defendant Management Recruiters shall withdraw the certificate of assumed name referred to in paragraph 5 of the bill of complaint.